IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. KAREN L. KIMMEL, | ) |
| | ) |
|     Plaintiff, | ) CA No. 07-00797-RWR |
| | ) |
| v. | ) |
| | ) |
| GALLAUDET UNIVERSITY, | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| _____ | ) |

**PLAINTIFF'S MEMORANDUM OF POINTS
AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

On May 29, 2007, Defendant filed its Motion to Dismiss (hereinafter "Defendant's Motion" or "Motion"). On May 31, 2007, Plaintiff filed Plaintiff's Unopposed Motion for an Extension of Time in Which to Oppose Defendant's Motion to Dismiss and Supporting Memorandum in which she asked for an extension of time to reply to Defendant's Motion until July 2, 2007. Accordingly, this Opposition is timely filed.

**I.     SUMMARY OF ARGUMENT**

Defendant has moved to dismiss all seven of Plaintiff's causes of action and, therefore, the Complaint in its entirety. Defendant's Motion should be denied as set forth below.

Plaintiff's first cause of action for retaliation under Title VI cannot be dismissed because Plaintiff has alleged retaliation for complaining about discrimination against individuals on the basis of their race. Contrary to Defendant's assertion, this cause of action is not based upon Plaintiff's opposition to policies having a disparate impact on minorities.

Plaintiff's second cause of action for retaliation under the DC Human Rights Act (hereinafter "DC HRA") cannot be dismissed because Plaintiff has sufficiently alleged that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal connection between the protected activity and the adverse action. Plaintiff has engaged in protected activity by opposing the discriminatory treatment of protected students, supporting faculty who were being discriminated against, expressing concerns about policies that disparately

impact minority students, and informing Defendant that she believed it was discriminating against her. Plaintiff also identified numerous adverse actions to which she was subjected, including diminution of duties, exclusion from duties, false public accusations of ethical improprieties, attacks on her reputation, defamation of character, and deprivation of compensation. Finally, Plaintiff alleged that Defendant's retaliation stemmed from her protected activity, which is all that is required under the liberal pleading rules.

Plaintiff's third cause of action for disability discrimination in violation of the DC HRA cannot be dismissed because Plaintiff has alleged discrimination on the basis of her hearing impairment, which Defendant concedes is a disability under the DC HRA. Under <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 515 (2002), and its progeny, this allegation is sufficient to defeat a motion to dismiss.

Plaintiff's fourth cause of action for disability discrimination in violation of the DC HRA cannot be dismissed because Plaintiff has properly alleged that she was subjected to a hostile work environment based upon her disability and, at this stage, she need do nothing more.

Plaintiff's sixth cause of action for Tortious Interference with Prospective Business Relations cannot be dismissed because Plaintiff identified three lost potential sources of employment and because Plaintiff, as a tenured professor, had a legitimate expectation of continued employment with Gallaudet.

Plaintiff withdraws both her fifth cause of action, intentional infliction of emotional distress, and her seventh cause of action, breach of contract.

## II.     ARGUMENT

### A.     <u>Standard of Review</u>.

Federal Rule of Civil Procedure 12(b)(6) provides that a case may be dismissed upon defendant's motion when the plaintiff fails in her complaint to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In rendering a decision, the court must accept as true all factual allegations in the complaint and give the plaintiff the benefit of all inferences that can be drawn from the facts alleged. <u>Atchinson v. Dist. of Columbia</u>, 73 F.3d 418, 422 (D.C. Cir.

1996).  A complaint may be dismissed under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002); see also Abigail Alliance For Better Access to Developmental Drugs v. Von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006)(holding that "[a] court should not dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'"), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Significantly, at this stage of the proceedings, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

      **B.**     **First Cause of Action:  Retaliation under Title VI.**

Defendant argues that Plaintiff's first cause of action must be dismissed because there is no private right of action to bring a retaliation claim based on opposition to policies having a disparate impact based on race, color, or national origin and that Plaintiff does not allege intentional discrimination against any student.  Mot. at 5.  This argument is patently incorrect; as set forth in the Complaint, Plaintiff has alleged retaliation for complaining about discrimination against *individuals* on the basis of their race.  Accordingly, the Defendant's argument must be rejected.

As Defendant agrees, there is a private right of action to enforce § 601 of Title VI.  See Mot. at 6, citing Alexander v. Sandoval, 532 U.S. 275, 280 (2001).  Section 601 prohibits, *inter alia*, retaliation for opposing intentional discrimination.  Chandamuri v. Georgetown Univ., 274 F. Supp. 2d 71 (D.D.C. 2003).  Plaintiff alleged in the Complaint that she was a supporter of minority and African American students who were labeled by Defendant as "developmental" or "at risk," and at various times, Plaintiff voiced concerns and complaints over discriminatory and unfair treatment of African American and minority students and colleagues.  Comp. ¶¶ 11, 12.  Specifically, Plaintiff identified an incident wherein she complained about the discriminatory treatment of an individual African American student whom she believed was being treated

3

unfairly because of his race. Comp. ¶ 19. Reading Plaintiff's Complaint in the manner required by Rule 12(b)(6), the claim for retaliation under Title VI is not based upon her opposition to policies that disproportionately impact protected classes of people, but rather for opposing discrimination against individuals. Such activity is protected by Title VI. Accordingly, Plaintiff has pled sufficient facts to support a claim for relief for retaliation under Title VI, and her first cause of action cannot be dismissed.

        C.      **Second Cause of Action: Retaliation under the DC Human Rights Act.**

Defendant argues that Plaintiff's second cause of action must be dismissed because Plaintiff cannot establish that she engaged in protected activity, that she suffered an adverse employment action, or that there was a causal connection between the protected activity and the adverse action. Contrary to Defendant's argument, Plaintiff is not required to prove in the Complaint each of the essential elements of her cause of action. Rather, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007)(internal citations and quotations omitted). Because Plaintiff has pled sufficient facts to put Defendant on notice of her claim of retaliation, Defendant's Motion with respect to the second cause of action must be denied.

        1.      **Plaintiff Has Alleged That She Engaged in Protected Activity.**

The D.C. Human Rights Act prohibits retaliation against any person exercising or aiding another in exercising any right granted by the DC HRA. D.C. Code § 2-1402.61(a). In addition, the DC HRA protects a person who "opposed any practice . . . or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing." D.C. Code § 2-1402.61(b). Defendant attempts to mischaracterize the gravamen of this cause of action by portraying Plaintiff's protected activity as aiding and abetting Jane Fernandes and exposing discrimination against African American and developmental students. Mot. at 10. In making this argument, Defendant has ignored vast portions of the Complaint. Moreover, it is unclear

how Defendant can simultaneously acknowledge Plaintiff's allegation that she exposed discrimination against African American and developmental students but then argue that this does not amount to an allegation that she engage in protected activity.

The Complaint asserts that, "At various times in the recent past, Dr. Kimmel engaged in protected activity by voicing concerns and complaints over the discriminatory and unfair treatment of deaf/Deaf Culture, African-American and other minority, and 'at risk' students and colleagues." Comp. ¶ 12. Expressing complaints about the discriminatory treatment of disabled and minority individuals is the quintessential act which the DC Human Rights Act was designed to protect from reprisal.

The allegations do not end there, however. Plaintiff also alleged in the Complaint that she openly expressed support for Dr. Jane Fernandes, who was being discriminated against on the basis of her disability. Comp. ¶ 18. Expressing support for someone who is being discriminated against is protected activity. Similarly, Plaintiff alleged that she has taken action to protect members of "protected classes" at Gallaudet. Comp. ¶ 19. One incident specifically identified in the Complaint occurred when "Dr. Kimmel complained about the discriminatory treatment of a male African-American student . . . . Dr. Kimmel's actions were in response to what she believed was discrimination against this student on the basis of race and disability . . . ." Comp. ¶ 19.

The Complaint contains other allegations describing Plaintiff's protected activity: "In or about January or February of 2006, Dr. Kimmel expressed concerns over a discriminatory policy of the Mathematics Department . . ." which Dr. Kimmel believed discriminated against African American and disabled students. Comp. ¶ 20. Finally, Dr. Kimmel engaged in protected activity when she notified Defendant in November 2006 that she believed Defendant was discriminating against her in violation of both the District of Columbia and federal anti-discrimination laws. Comp. ¶ 22.

Plaintiff has plainly pled sufficient facts to place Defendant on notice that she engaged in protected activity. Each of the acts alleged in the Complaint, when taken as true, are sufficient to

5

establish the first prong of a claim of retaliation under the DC Human Rights Act. Accordingly, Defendant's Motion must be denied.

### 2. Plaintiff Has Alleged That She Suffered an Adverse Action.

The Supreme Court recently clarified the definition of an adverse action: "the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2409 (2006). "The issue of whether a particular employment action was materially adverse generally is fact-intensive and depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Robinson v. Winter, 457 F. Supp. 2d 32, 35 (D.D.C. 2006) (Friedman, J.) (internal citations and quotations omitted).

In White, the Court concluded that reassignment of duties could be an adverse action, and noted that "the EEOC has consistently found '[r]etaliatory work assignments' to be a classic and 'widely recognized' example of 'forbidden retaliation.'" White, 126 S.Ct. at 2417. Here, Dr. Kimmel alleged in the Complaint that "her job responsibilities have been reduced, [and] she has been routinely omitted from administrative decisions of which she would have once been a part . . . ." Comp. ¶¶ 18, 23. Specifically, Dr. Kimmel identified her exclusion from "several important personnel decisions at Gallaudet that, absent retaliation against her for protected activities, would normally have included her in her capacity as Dean. Not only was Dr. Kimmel not consulted about these personnel changes, but she had no knowledge of them whatsoever until after they had occurred." Comp. ¶ 23. Finally, Dr. Kimmel alleged that she was "excluded from the Recruitment, Enrollment and Retention Team despite her position as Dean and the fact that her job duties traditionally included membership in that team and a focus on recruitment,

6

enrollment and retention. When the President of Gallaudet requested participants for the Academic Rigor Working Team, Dr. Kimmel volunteered to serve based on her experience and knowledge of Gallaudet. However, her desire to participate, as part of her duties as Dean, has been largely ignored and appears even to have stalled the committee's formation." Comp. ¶ 24. Thus, Plaintiff's allegations that she was excluded from and thereby prevented from executing critical and previously essential duties clearly constitutes adverse action and is sufficient to defeat Defendant's Motion. See Czekalski v. Peters, 475 F.3d 360, 365 (D.C. Cir. 2007) (explaining that "[w]hether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question.").

      As the Court made clear, an employer can retaliate against an employee by taking actions not directly related to employment. White, 126 S.Ct. at 2412. Fear of harm to one's reputation in the community and public allegations of illegal actions and ethical violations could readily serve to dissuade an employee from engaging in protected activity and thereby constitute a "materially adverse action" for purposes of the retaliation provisions of the D.C. HRA. Plaintiff has alleged such adverse actions through the "defamatory falsehoods spread by Gallaudet employees and agents and intended to destroy her reputation." Comp. ¶ 18. "One example of this retaliation came through the defamation of her character and reputation in a November 9, 2006 Washington Post article titled 'A Conflict on Integrity Surfaces,'" which described false accusations publicly leveled against Dr. Kimmel by unnamed employees of Defendant. Comp. ¶ 21. "The falsehoods spread by Gallaudet employees and agents, and contained in the Post article, suggest that Dr. Kimmel lacked integrity and lowered standards when in fact her only goal was to protect the civil rights of Gallaudet's students by challenging what she believed to be illegal discrimination." Comp. ¶ 21. These defamatory allegations were spread further as reflected in a recent report prepared for the NCAA which similarly and falsely suggests that Dr. Kimmel was involved in grade-changing. Comp. ¶ 25. Moreover, contrary to Defendant's assertion that Plaintiff did not allege any harm in this regard, in the Complaint Plaintiff alleged that Defendant's actions "damaged her reputation and future in academia." Comp. ¶ 12.

7

Finally, a loss of pay can be an adverse action. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 717 (8th Cir. 2003); Stutler v. Ill. Dep't of Corrs., 263 F.3d 698, 703 (7th Cir. 2001); Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 885-86 (6th Cir. 1996). Similarly, even under the pre-White decisions involving allegations of reprisal, "actions that affect compensation are considered adverse employment actions." Gillis v. Ga. Dep't of Corr., 400 F.3d 883, 887 (11th Cir. 2005); see also Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) (finding that denial of a raise may constitute an adverse action). In Gillis, the plaintiff alleged that she suffered an adverse action when she was deprived of a higher pay raise based upon her rating of "meets expectations." Id. Plaintiff's allegations here are almost identical. In the Complaint, Dr. Kimmel alleged that "[d]espite having consistently received a commendable rating in her annual evaluations, and despite normally receiving a 6% merit pay increase, Dr. Kimmel was recently informed by the Interim Provost that he discussed the merit award with the President and that this year she would receive only a 3% merit pay increase." Comp. ¶ 26. It is axiomatic that a smaller pay increase not only causes immediate harm, but also causes future harm because Dr. Kimmel's future raises will be determined based on her lowered salary.

Defendant cites Johnson v. Joo, 2006 U.S. Dist. LEXIS 13022 (D.D.C. Mar. 12, 2006), as supporting its Motion. The case, however, supports Plaintiff's argument, not Defendant's. The full quotation, which was truncated by Defendant, is as follows:

> While it is not necessarily self-evident that providing an individual with an added benefit (a raise) that fell below their expectations is an "adverse action" for the purposes of Title VII, the Court will assume for the purposes of Defendant's motion that Defendant's failure to completely meet Plaintiff's raise request was an "adverse action," given (1) Defendant's failure to address this issue, (2) the fact that a salary alteration was at issue, and (3) the recent decision by the D.C. Circuit in Rochon v. Gonzales, 438 F.3d 1211, 2006 WL 463116, at *4-*8 (D.C. Cir. Feb. 28, 2006), that suggests a more expansive reading of the "adverse action" requirement is appropriate. As such, . . . Plaintiff has met -- or the Court has assumed that Plaintiff has met -- the first two prongs of the "adverse action" requirement . . . .

Johnson, 2006 U.S. Dist. LEXIS 13022, *71 (attached to Defendant's Motion as Exhibit 2.) In other words, Plaintiff's allegation that she received a lesser raise than reasonably anticipated qualifies as an adverse action sufficient to defeat Defendant's Motion.

### 3. Plaintiff Does Not Have to Prove, Through the Complaint, That There Is a Causal Connection Between Her Protected Activity and the Adverse Action.

A plaintiff claiming employment discrimination is not required to allege a prima facie case of discrimination in her complaint in order to avoid dismissal. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002). This is "because racial discrimination in employment is 'a claim upon which relief can be granted' . . . . 'I was turned down for a job because of my race' is all a complaint has to say to survive a motion to dismiss under Rule 12(b)(6)." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1115 (D.C. Cir. 2000) (internal quotation and citations omitted). Moreover, this prong of Defendant's argument has already been neatly disposed of by the court in Rochon v. Gonzales, 438 F.3d 1211 (D.C. Cir. 2006): "in order to survive a motion to dismiss, 'all [the] complaint has to say,' id. at 1115, is 'the Government retaliated against me because I engaged in protected activity.'" 438 F.3d at 1220.[1] Plaintiff has made that precise allegation (see Comp. ¶¶ 34-38); therefore, Defendant's Motion must be denied.

### D. Third Cause of Action: Disability Discrimination Under the DC Human Right Act.

Defendant argues that Plaintiff's third cause of action must be dismissed because Plaintiff does not allege that she is being discriminated against on the basis of disability. Mot. at 18. Notably, Defendant concedes that Plaintiff is disabled as defined by the DC HRA. Id. However, Defendant then twists the language of the Complaint and asserts that Plaintiff's allegations are based upon cultural distinctions rather than disability. This assertion is simply not supported by the plain text of the Complaint.

In the Complaint, while Plaintiff provided background information on Deaf Culture and explained how this was relevant to her claims, her third cause of action expressly addresses the discrimination she suffered as a result of her hearing disability. Specifically, Plaintiff alleged that she was subjected to adverse actions by Defendant's agents and employees based upon her

---

[1] The District of Columbia looks "to federal cases interpreting Title VII and its implementing regulations for guidance in . . . decisions under the D.C. Human Rights Act." D.C. Hous. Auth. v. D.C. Office of Human Rights, 881 A.2d 600, 612 (D.C. 2005).

level of deafness (she is not completely deaf) and the manner in which she chooses to respond to her hearing impairment (using amplification, speech reading, and ASL).  See Comp. ¶¶ 8, 15, 18.  As worded, Plaintiff has plainly met the requirements of Swierkiewicz because her allegation that she is being subjected to adverse action as a result of the nature and extent of her disability is quintessentially a claim upon which relief may be granted. Swierkiewicz, 534 U.S. at 515; see also Sparrow, 216 F.3d at 1115.  The fact that certain of the individuals discriminating against Plaintiff are also deaf does not negate the illegality of their actions toward Plaintiff as a result of her disability. See, e.g., Udoh v. Trade Ctr. Mgmt. Assocs., 479 F. Supp. 2d 60, 63 n.1 (D.D.C. 2007)(addressing discrimination perpetrated my members of one's own minority group based upon variations in skin complexion); Brack v. Shoney's, Inc., 249 F. Supp. 2d 938, 947 (W.D. Tn 2003)("A member of a protected group may discriminate against another member of the same group in violation of Title VII.").  Accordingly, Defendant's Motion must be denied.

      **E.**    **Fourth Cause of Action: Hostile Work Environment under the DC Human Rights Act.**

Defendant argues that Plaintiff's fourth cause of action must be dismissed because Plaintiff cannot establish that she was subjected to harassment because of disability.  Mot. at 19.  Defendant's argument is identical to that proffered in Subsection D, *supra*, which is that Plaintiff has not alleged that the discrimination she suffered stemmed from her disability. Id.

As Plaintiff explained above, Defendant is mischaracterizing her allegations.  Plaintiff has properly alleged that she was subjected to a hostile work environment based upon her disability. See Comp. ¶¶ 8, 15, 18.  She explained that as a result of her hearing impairment (which Defendant concedes is a disability), she has become a "victim of workplace discrimination," was "discriminated against based upon her disability/hearing status," encountered an "intolerable" "workplace environment," suffered an "increasingly hostile" environment at Gallaudet, and "has been harassed."  Comp. ¶ 18,  In sum, Plaintiff has more than adequately apprised Defendant of the basis for her claim; she need do nothing more in the Complaint. Accordingly, Defendant's Motion must be denied.

    **F.**    **Fifth Cause of Action: Intentional Infliction of Emotional Distress.**

Complaint withdraws this cause of action.

    **G.**    **Sixth Cause of Action: Tortious Interference with Prospective Business Relations.**

Defendant argues that Plaintiff's sixth cause of action must be dismissed because Gallaudet cannot tortiously interfere with its own business relations with Plaintiff and because Plaintiff has not identified any specific expectancy. Mot. at 20. Defendant's argument fails on both counts because Plaintiff identified three lost job opportunities and because Plaintiff, as a tenured professor, had a legitimate expectancy in lifetime employment.

Tortious interference with prospective business relations is defined as follows:

> One who intentionally interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from the loss of the benefits of the relation, whether the interference consists of:
>
> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>
> (b) preventing the other from acquiring or continuing the prospective relation.

Ellsworth Assocs. v. United States, 917 F. Supp. 841, 849 (D.D.C. 1996). "To establish a claim for tortious interference with prospective economic advantage, a plaintiff ordinarily must plead (1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage." Genetic Systems Corp. v. Abbott Laboratories, 691 F. Supp. 407, 422-23 (D.D.C. 1988). In Defendant's Motion, its sole argument is that Plaintiff did not establish the first element of this cause of action.

"The first element – business expectancy – must be commercially reasonable to anticipate." Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). The expectancies to be protected include "those of future contractual relations, such as the prospect of obtaining employment . . . ." Sheppard v. Dickstein, Shapiro, Morin & Oshinsky, 59 F. Supp. 2d 27, 34

(D.D.C. 1999). Plaintiff has sufficiently pled facts establishing the first element of this cause of action, namely, that she had a "valid business expectancy that she would be able to teach, and possibly also serve as an administrator, in higher education . . . ." Comp. ¶ 53. Given Plaintiff's educational, academic, administrative, and teaching background, it is indisputable that she intended to remain in academia, whether at Gallaudet or elsewhere, for the remainder of her career. Comp. ¶ 53. This is especially true given Plaintiff's standing at the time as the Dean of the College of Liberal Arts, Sciences, and Technologies and as a fully tenured professor at Gallaudet. Comp. ¶ 5. Thus, the expectancy that Plaintiff would continue to teach is patently reasonable to anticipate.

Defendant asserts that a party to a contract cannot tortiously interfere with its own contract, and therefore, Plaintiff's claim must fail. Mot. at 21. Defendant's argument, and the cases upon which it relies, are inapposite because they pertain to a wholly separate cause of action involving tortious interference with contract, not tortious interference with prospective economic advantage. The elements of these two claims are quite different thereby preventing the extrapolation of rulings on one claim to the other. Moreover, while it is well established that an at-will employee cannot maintain a claim for interference of prospective advantage because there is no reasonable business expectancy of continued employment (see McManus v. MCI Communications Corp., 748 A.2d 949, 957 (D.C. 2000)), that situation is not present here. Instead, Plaintiff is a tenured professor at Gallaudet with a reasonable – indeed almost guaranteed – business expectancy of lifetime employment.

In addition, Plaintiff alleged that "[a]t least three potential sources of prospective employment have disappeared . . ." as a result of Defendant's actions. Comp. ¶ 54. Given Defendant's efforts to drive Plaintiff from Gallaudet, Defendant is undoubtedly aware that Plaintiff is seeking other sources of employment. Plaintiff's ability to do so would necessarily be severely damaged by allegations impugning her ethics and credibility. See Genetic Systems Corp., 691 F. Supp. at 423 (concluding that a claim may be maintained if the defendant's conduct involves libel, slander, misrepresentation, or disparagement).

Contrary to Defendant's argument, the fact that the three sources of employment are not identified in the Complaint is not fatal to her claim.  See Browning, 292 F.3d at 243.  In Browning, the plaintiff alleged that defendant "threatened . . . potential publishers"; however, she did not identify the statements made or the publishers at issue.  Id.  Consequently, defendant argued that the allegation was too "conclusory."  Id.  The court disagreed:  "Whether a triable issue of fact exists regarding her allegation that 'potential publishers' failed to respond positively due to 'threats' from [Defendant] is a question for summary judgment" not a motion to dismiss.  Id.  Moreover, just as in Browning, the fact that Plaintiff's allegation is based on information and belief cannot defeat her claim.  "Though extremely general and based only 'on information and belief,' the allegation satisfies Rule 8 [by giving] 'fair notice of what [Browning's] claim is and the grounds upon which it rests.'"  Id., citing Swierkiewicz, 534 U.S. at 512.

Accordingly, Defendant's Motion must be rejected.

### H. Seventh Cause of Action: Breach of Contract.

Plaintiff withdraws this cause of action.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion with respect to causes of action 1, 2, 3, 4, and 6 must be denied.  Plaintiff voluntarily withdraws causes of action 5 and 7.

Respectfully submitted,

\s\
_____
Elaine L. Fitch
D.C. Bar No. 471240
George M. Chuzi
D.C. Bar No. 336503
KALIJARVI, CHUZI & NEWMAN, P.C.
1901 L Street, N.W., Suite 610
Washington, D.C.  20036
Tel: (202) 331-9260
Fax: (202) 331-9261

Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. KAREN L. KIMMEL, | ) |
| | ) |
| Plaintiff, | ) CA No. 07-00797 (RWR) |
| | ) |
| v. | ) |
| | ) |
| GALLAUDET UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Upon consideration of Defendant's Motion to Dismiss and Plaintiff's Opposition thereto

It is hereby **ORDERED** that Defendant's Motion to Dismiss is **DENIED** with respect to causes of action 1, 2, 3, 4, and 6, and

Based upon Plaintiff's voluntary dismissal of causes of action 5 and 7, it is further

**ORDERED** that causes of action 5 and 7 are hereby **DISMISSED**.

_____
JUDGE